# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| U.S. BANK, | Case No. 2:16-CV-2785 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| EAGLE INVESTORS, et al., | |
| Defendant(s). | |

Presently before the court is defendant Shadow Springs Community Association's ("Shadow Springs") motion for summary judgment. (ECF No. 51). Plaintiff U.S. Bank N.A. ("U.S. Bank") filed a response (ECF No. 56), to which Shadow Springs replied (ECF No. 61).

Also before the court is U.S. Bank's motion for summary judgment. (ECF No. 52). Shadow Springs, defendant Red Rock Financial Services, LLC ("Red Rock"), and defendant Eagle Investors filed separate responses (ECF Nos. 57, 58, 59), to which U.S. Bank replied (ECF No. 52).

Also before the court is Eagle Investors' motion for summary judgment. (ECF No. 53). U.S. Bank filed a response (ECF No. 60), to which Eagle Investors replied (ECF No. 63).

**I.      Facts**

This action arises from a dispute over real property located at 3225 Edinboro Ridge Avenue, North Las Vegas, Nevada 89081 ("the property"). (ECF No. 1).

Efren Delgado purchased the property on or about February 23, 2007. (ECF No. 1). Delgado financed the purchase with a loan in the amount of $245,000.00 from Mortgageit, Inc. ("Mortgageit"). (ECF No. 52-2). *Id*. Mortgageit secured the loan with a deed of trust, which names Mortgageit as the lender, Title One as the trustee, and Mortgage Electronic Registration

**James C. Mahan**
**U.S. District Judge**

Systems, Inc. ("MERS") as the beneficiary as nominee for the lender and lender's successors and assigns. *Id*. U.S. Bank currently holds all beneficial interest in the deed of trust. (ECF No. 52-3, 52, 59-11).

On March 30, 2009, Shadow Springs, through its agent Red Rock, recorded a notice of delinquent assessment lien ("the lien") against the property for Delgado's failure to pay Shadow Springs in the amount of $719.00. (ECF No. 52-4). On May 14, 2009, Shadow Springs recorded a notice of default and election to sell pursuant to the lien, stating that the amount due was $1,748.02 as of May 12, 2009. (ECF No. 52-5). On July 20, 2009, Shadow Springs sent a letter to U.S. Bank's predecessor in interest stating that it had recorded a notice of default against the property and that the lien was junior to the deed of trust. (ECF No. 52-6). Shadow Springs repeated these representations regarding the junior nature of the lien in several subsequent communications. *Id*.

On December 19, 2013, Shadow Springs recorded a notice of foreclosure sale against the property. (ECF No. 10). On January 13, 2014, Shadow Springs sold the property in a non-judicial foreclosure sale to Eagle Investors in exchange for $20,500.00. (ECF No. 52-11). On January 16, 2014, Shadow Springs recorded the trustee's deed upon sale with the Clark County recorder's office. *Id*.

On December 6, 2016, U.S. Bank filed a complaint alleging a single cause of action for quiet title and declaratory relief against Shadow Springs and Eagle Investors. (ECF No. 1). On February 6, 2017, Shadow Springs filed a third-party complaint against Red Rock seeking indemnity and contribution. (ECF No. 9). On February 28, 2017, Eagle Investors filed an answer and counterclaim, asserting a single cause of action for quiet title and declaratory relief against U.S Bank. (ECF No. 14).

Now, U.S. Bank, Red Rock, and Shadow Springs have filed motions for summary judgment. (ECF Nos. 51, 52, 53).

**II.    Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

**James C. Mahan**
**U.S. District Judge**

show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, a party must show that its claim to the property is superior to all others in order to succeed on a quiet title action. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the Nevada Revised Statutes[1] allows an HOA to place a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1).

---

[1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are

Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to the subparagraph (2)(b) exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

NRS 116.3116 *et seq.* ("Chapter 116") permits an HOA to enforce its superpriority lien with a nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

NRS 116.31166(1) provides that when an HOA forecloses on a property pursuant to NRS 116.31164, the following recitals in the trustee's deed upon sale are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2] "The 'conclusive' recitals concern . . . all statutory prerequisites to a valid HOA lien foreclosure sale." *See Shadow Wood Homeowners Assoc. v. N.Y.*

---

to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

[2] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the

*Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016). Nevertheless, courts retain the equitable authority to consider quiet title actions even when an HOA's trustee's deed upon sale contains statutorily conclusive recitals. *See id.* at 1112.

Here, the parties have provided the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of trustee's sale, and the recorded trustee's deed upon sale. (ECF Nos. 52-4, 52-5, 52-10, 52-11). Further, the recorded trustee's deed upon sale contains the necessary recitals to establish compliance with NRS 116.31162 through NRS 116.31164. (ECF No. 52-11); *see Shadow Wood*, 466 P.3d at 1112. Therefore, pursuant to NRS 116.31166 and the recorded trustee's deed upon sale, the foreclosure sale was valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

While NRS 116.3116 accords certain deed recitals conclusive effect, it does not conclusively entitle the buyer at the HOA foreclosure sale to success on a quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

U.S. Bank argues that the court should grant its motion because the foreclosure sale for approximately 16% of the property's fair market value ($127,560.00) is grossly inadequate and because U.S. Bank can establish evidence of fraud, unfairness, or oppression. (ECF No. 52).

---

purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

Shadow Springs and Eagle Investors argue that the foreclosure sale was commercially reasonable because the sale price ($20,500.00) was not grossly inadequate given the conditions under which the property was sold and because U.S. Bank has not presented any evidence of fraud, unfairness, or oppression. (ECF Nos. 51, 53).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[3]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the trustee's deed upon sale where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id.* at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963))) ("*Long*").

U.S. Bank overlooks the reality of the foreclosure process. The amount of the lien—not the fair market value of the property—is what typically sets the sales price. Further, U.S. Bank

---

[3] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale. U.S. Bank argues that the sale was unfair because Shadow Springs sent letters to U.S. Bank's predecessor in interest representing that the foreclosure sale would not extinguish the deed of trust. (ECF Nos. 52, 52-6). However, U.S. Bank has not provided any evidence showing that it relied on Shadow Springs' letters. Further, the amount due was set forth in the notice of default and election to sell and in the notice of trustee's sale. (ECF Nos. 52-5, 52-10). Rather than tendering the noticed amount under protest so as to preserve its interest and then later seeking a refund of the difference in dispute, BNYM chose to allow the foreclosure sale to proceed.

Accordingly, U.S. Bank's commercial reasonability argument fails as a matter of law, as U.S. Bank failed to show that the sale price was grossly inadequate and reflected fraud, unfairness, or oppression. *See, e.g., Nationstar Mortg., LLC*, No. 70653, 2017 WL 1423938, at *3 n.2 ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

**IV. Conclusion**

In light of the foregoing, the court will grant summary judgment in favor of Eagle Investors and Shadow Springs. As there are no pertinent issues left in this litigation, the court will dismiss as moot all remaining causes of action.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Shadow Springs' motion for summary judgment (ECF No. 51) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that U.S. Bank's motion for summary judgment (ECF No. 52) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Eagle Investors' motion for summary judgment (ECF No. 53) be, and the same hereby is, GRANTED, consistent with the foregoing.

. . .

**James C. Mahan**
**U.S. District Judge**

The clerk shall enter judgment accordingly and close the case.

DATED July 31, 2019.

                                                              _____
                                                              UNITED STATES DISTRICT JUDGE